# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

CLIFTON R. BUSH, SR.,      )
                                 )
      Plaintiff,           )
                                 )
v.                             )     Case No.:  2:18-cv-00732-SGC
                                 )
DEBORAH FRAZIER, et al.,    )
                                 )
      Defendants.     )

## MEMORANDUM OPINION[1]

Pending before the undersigned is the defendants' motion to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. (Doc. 27).[2] For the reasons discussed below, the motion is due to be granted, and this action is due to be dismissed.

## I. Amended Complaint

The plaintiff, Clifton R. Bush, Sr., and his wife divorced in December 2009. (Doc. 19 at 14). The Circuit Court of Jefferson County, Alabama ordered the plaintiff to pay $743.00 per month in child support. (*Id.* at 17). The court modified the plaintiff's child support obligation in October 2012. (*Id.* at 19). The modification reduced the plaintiff's child support obligation to $586.75 per month,

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 22).
[2] The parties appeared before the undersigned and argued their respective positions during a hearing held on October 11, 2018.

*retroactive to March 1, 2011. (Id.).*

Between October or November 2017 and March 2018, the Alabama Department of Human Resources ("ADHR") garnished the plaintiff's account(s) at Regions Bank to collect child support payments he owed. (*Id.* at 7, 11). According to the plaintiff, the amount garnished was based on his pre-modification obligation. (*Id.* at 11). The plaintiff alleges Ashley Lee, an ADHR employee, initiated the garnishment without conducting an investigation, submitted incorrect documents to Regions Bank, and otherwise mishandled the matter. (*Id.* at 7, 12). The plaintiff alleges Deborah Frazier (Lee's supervisor), Aminha Roussell (Assistant Director of ADHR's Child Support Enforcement Program), and Lathesia Saulsberry (Director of ADHR's Child Support Enforcement Program) failed to review or wrongfully approved documents Lee submitted to Regions Bank in connection with the garnishment. (*Id.* at 7, 12).[3]

In March 2018, ADHR moved to intervene in the plaintiff's domestic relations case and set aside an agreement into which the plaintiff and his former wife had entered. (*Id.* at 7-8). The plaintiff had to travel to Birmingham, Alabama from Galveston, Texas for a hearing on the motion. (*Id.* at 8). During the hearing, ADHR made an oral motion to dismiss, which the court granted. (*Id.*). The plaintiff alleges ADHR and the defendants had financial interests in his domestic

---

[3] The plaintiff incorrectly identifies Aminha Roussell as Imna Rousell and Lathesia Saulsberry as Lathesia Saulsderry. (*Id.* at 4-5).

relations proceedings. (*Id.*).

Following the hearing, the plaintiff spoke with an agent and/or financial representative of the State of Alabama, who reviewed documents presented to him by the plaintiff, stated "this was not right," and gave him contact information for an attorney. (*Id.*). The attorney reviewed the documents and told the plaintiff "to talk to someone in Montgomery to resolve the matter." (*Id.*).

On or about April 30, 2018, the plaintiff met with Saulsberry and Roussell. (*Id.* at 8-9). He presented documents related to his divorce proceedings to them. (*Id.* at 9). Roussell said ADHR did not have the court documents and made copies. (*Id.*). Saulsberry and Roussell then coerced the plaintiff into signing a "review paper," stating that was the only way for his money to be returned. (*Id.*).

Based on the foregoing factual allegations, the plaintiff claims ADHR, Lee, Frazier, Roussell, and Saulsberry violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the U.S. Constitution;[4] 15 U.S.C. §§ 1672(c) and 1673(c), which are garnishment provisions of the Consumer Credit Protection Act; 18 U.S.C. § 666, which criminalizes theft or bribery concerning programs receiving federal funds; 42 U.S.C. § 1983, which prohibits the deprivation of

---

[4] More specifically, the plaintiff alleges the defendants' conduct violated his Fourth Amendment right to be free from unreasonable searches and seizures, his Fifth and Fourteenth Amendment rights not to be deprived of property without due process of law, and his Eighth Amendment right to be free from the imposition of excessive fines and cruel and unusual punishment. (Doc. 19 at 7, 9, 12-13; Doc. 39 at 2, 4-5). The plaintiff first mentions his Fourth and Fourteenth Amendment rights in his response to the defendants' motion to dismiss. (Doc. 39 at 2, 4-5).

federal rights by "persons" acting under color of state law; 45 C.F.R. §§ 302.34 and 302.50(e), which set out state plan requirements for child support enforcement programs under Title IV-D of the Social Security Act; Ala. Code § 13A-8-2, which criminalizes theft of property; and Ala. Code § 13A-8-3, which provides that theft of property exceeding $2,500 in value constitutes first-degree theft of property, a Class B felony. (*Id.* at 7-13). He also alleges Frazier, Roussell, and Saulsberry failed to properly train employees under their supervision. (*Id.* at 7, 12). He requests a variety of monetary damages. (*Id.* at 11-13).

## II. Standard of Review

Dismissal under Rule 12(b)(6) is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at

555, 557) (internal quotations omitted). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

Although the defendants purport to bring their motion exclusively pursuant to Rule 12(b)(6), their asserted grounds for dismissal implicate Rule 12(b)(1), as well. Dismissal is appropriate under Rule 12(b)(1) where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). For example, "a dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010). Additionally, dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is appropriate to the extent a plaintiff asserts a claim under a statute that affords no private right of action. *See Abner v. Mobile Infirmary Hosp.*, 149 F. App'x 857, 858-59 (11th Cir. 2005) (holding district court properly found subject matter jurisdiction lacking where statute at issue provided no private right of action).

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to

the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501

F.3d 1244, 1251 (11th Cir. 2007).

> A "facial attack" on the complaint requires the court merely to look
> and see if the plaintiff has sufficiently alleged a basis of subject matter
> jurisdiction, and the allegations in his complaint are taken as true for
> the purposes of the motion. "Factual attacks, on the other hand,
> challenge the existence of subject matter jurisdiction in fact,
> irrespective of the pleadings, and matters outside the pleadings, such
> as testimony and affidavits are considered.

*Id.* (internal quotation marks and citation omitted). The defendants have not

submitted evidence outside the pleadings to support their arguments with respect to

subject matter jurisdiction.[5]   Therefore, they have made a facial attack on the

amended complaint.

## III. Discussion

### A. Section 1983 Claims

Title 42, Section 1983 of the U.S. Code " 'is not itself a source of

substantive rights.'"   *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  It provides a private right of

action to vindicate violations of federal rights elsewhere conferred by the U.S.

Constitution and federal statutes.  *See id.* (recognizing purpose of § 1983); *Maine*

*v. Thiboutot*, 448 U.S. 1, 4-8 (1980) (rejecting argument § 1983 provides cause of

---

[5] The defendants have submitted evidence outside the pleadings in support of their arguments the amended complaint is due to be dismissed pursuant to the doctrines of abstention, *res judicata*, and collateral estoppel.  (Doc. 27 at 5-7, 12-16; Doc. 27-1).  The undersigned declines to address these argument because alternative grounds support dismissal.

action only for constitutional violations).

Accordingly, the undersigned construes the plaintiff's claim for a violation of § 1983 as a vehicle for asserting his claims for violations of various other federal constitutional, statutory, and regulatory provisions. *See Green v. Pennington*, 2006 WL 1553999, at *1 (N.D. Ga. May 30, 2006) (holding claim for violation of § 1983 was more appropriately viewed as vehicle for bringing claims for due process and equal protection violations). So construed, the plaintiff's claims brought pursuant to § 1983 implicate whether the defendants are "persons" subject to suit under § 1983, as well as sovereign and qualified immunity. These defenses will be addressed after consideration of the plaintiff's the failure-to-train claim against Frazier, Roussell, and Saulsberry.

## 1. Failure-to-Train Claim

"[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact.'" *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in [the] training program causes [subordinates] to violate citizens' constitutional rights,'

7

and that armed with that knowledge the supervisor chose to retain that training program. *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To establish the requisite actual or constructive notice, " '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Id.* at 1053 (quoting *Connick*, 563 U.S. at 62); *see also Belcher v. City of Foley, Alabama*, 30 F.3d 1390, 1397-98 (11th Cir. 1994) ("Failure to train can amount to deliberate indifference when the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right." (internal citations omitted)).

Here, the plaintiff does not allege a pattern of similar constitutional violations by untrained employees or any other facts that would support the inference Frazier, Roussell, or Saulsberry had actual or constructive notice of a deficiency in their training of subordinates. Accordingly, to the extent the plaintiff asserts a failure-to-train claim against these defendants pursuant to § 1983, that claim is due to be dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted.[6]

---

[6] The undersigned does not read the amended complaint to include a claim for supervisory liability against Frazier, Roussell, or Saulsberry. Nonetheless, the undersigned notes any such claim would fail. "The standard by which a supervisor is held liable in [his] individual capacity

The plaintiff's claim fares no better construed as brought pursuant to Alabama law. "Alabama does not recognize a cause of action for a supervisor's negligent training or supervision of a subordinate." *Lucio v. City of Tarrant, Alabama*, 2014 WL 3543696, at *3 (N.D. Ala. July 16, 2014). This is because under Alabama law, the tort of negligent supervision or training requires the existence of a master-servant relationship, and "a supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of master is restricted to one who is actually or essentially the employer of the servant." *Bell v. City of York, Alabama*, 2013 WL 1352022, at *29 (N.D. Ala. Mar. 29, 2013) (internal quotation marks omitted). Accordingly, to the extent the plaintiff asserts a failure-to-train claim against Frazier, Roussell, and Saulsberry under Alabama law, that claim is due to be

---

for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). "It is well established in [the Eleventh Circuit] that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Id.* (internal quotation marks omitted). Apart from personal participation in the alleged unconstitutional conduct, supervisory liability is available only where there is a causal connection between the supervisor's actions and the alleged constitutional deprivation. *Id.* The requisite causal connection is established (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; (3) or "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation marks and alterations omitted). The plaintiff does not allege any facts that would establish the requisite causal connection.

dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted.

## 2. "Persons" Subject to § 1983 Claim & Sovereign Immunity

A necessary element of a § 1983 claim is that the claim be asserted against a "person" acting under color of state law. *Greffey v. State of Alabama Dep't of Corr.*, 996 F. Supp. 1368, 1377 (N.D. Ala. 1998). A suable "person" under the statute does not include a state, state agency, or state official to the extent sued in her official capacity for money damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also A.D. ex rel. McGhee v. Alabama Dep't of Human Res.*, 995 F. Supp. 2d 1253, 1269 (N.D. Ala. 2014) (holding ADHR is not a "person" subject to suit under § 1983).

Relatedly, the Eleventh Amendment bars suits for money damages against a state by its citizens. *See* U.S. Const. amend. XI; *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (internal citation omitted); *see also Seminole Tribe of Florida v. State of*

*Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994) (Where no exception applies, "the Eleventh Amendment serves as a jurisdictional bar to the suit.").

There are three exceptions to the application of Eleventh Amendment, or sovereign, immunity: (1) a state may waive its immunity, (2) Congress may abrogate the immunity, and (3) under the doctrine announced by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), a citizen may sue a state official in her official capacity for prospective injunctive relief to end a continuing violation of federal law. *Carr*, 916 F.2d at 1524, 1524 n.2 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984); *Ex parte Young*, 209 U.S. 123; *Kentucky v. Graham*, 473 U.S. 159 (1985)).

The State of Alabama has not waived its Eleventh Amendment immunity. *See* Ala. Const. Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Carr*, 916 F.2d at 1525. Congress has not abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983. *Carr*, 916 F.2d at 1525 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Because the plaintiff seeks only monetary relief, the *Ex parte Young* doctrine does not apply. *See Carr*, 916 F.2d at 1524 n.2 (holding "narrow" third exception to Eleventh Amendment immunity did not apply because appellants sought only monetary relief).

Eleventh Amendment immunity extends to state entities and officers when they act as "arm[s] of the state." *Lightfoot v. Henry Cty. School Dist.*, 771 F.3d 764, 768 (11th Cir. 2014) (internal quotation marks omitted). State and federal case law makes clear that ADHR is an arm of the state entitled to Eleventh Amendment immunity. *See, e.g.*, *Rizo v. Alabama Dep't of Human Res.*, 228 F. App'x 832, 834-35 (11th Cir. 2007) (affirming dismissal of claims against ADHR based on Eleventh Amendment immunity); *Zeigler v. Alabama Dep't of Human Res.*, 710 F. Supp. 2d 1229, 1249-50 (M.D. Ala. 2010) (dismissing claims against ADHR based on Eleventh Amendment immunity); *Ex parte Mobile Cty. Dep't of Human Res.*, 815 So. 2d 527, 530 (Ala. 2001) (same); *Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1224 (N.D. Ala. 2014) (noting ADHR is an arm of the state for purposes of Eleventh Amendment immunity). Moreover, as agents of ADHR, Lee, Frazier, Roussell, and Saulsberry are entitled to Eleventh Amendment immunity to the extent the plaintiff asserts § 1983 claims against them in their official capacities. *See Tomberlin*, 1 F. Supp. 3d at 1224-25 (dismissing claims against employees of county subdivision of ADHR in their officials capacities based on Eleventh Amendment immunity).

For the foregoing reasons, the plaintiff's claims for violations of various federal constitutional, statutory, and regulatory provisions asserted through § 1983 against ADHR and against Lee, Frazier, Roussell, and Saulsberry in their official

capacities are due to be dismissed with prejudice pursuant to Rule 12(b)(6) because they are not "persons" subject to suit under § 1983 or, alternatively, pursuant to Rule 12(b)(1) because sovereign immunity deprives this court of subject matter jurisdiction.[7]

### 3. Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted).[8] "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "It is therefore appropriate for a district court to grant the defense of qualified

---

[7] Because the Eleventh Amendment clearly bars these claims, the undersigned assumes, without deciding, the federal statutes the plaintiff alleges the defendants violated create federal rights enforceable through § 1983. *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997) ("[T]o seek redress through § 1983, [] a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." (emphasis in original)); *Harris v. James*, 127 F.3d 993, 997-1004, 1009 (11th Cir. 1997) (discussing three-prong test for determining whether statute creates federal right enforceable through § 1983, as articulated in a series of United States Supreme Court cases). The undersigned further assumes, without deciding, the statutory provisions underlying the federal regulations the plaintiff alleges the defendants violated create enforceable federal rights. *See Harris*, 127 F.3d at 1009 (explaining that federal regulations do not create enforceable rights in and of themselves); *Fla. Pharmacy Ass'n v. Cook*, 17 F. Supp. 2d 1293, 1297-98 (N.D. Fla. 1998) (same).
[8] A state official sued in her individual capacity for money damages is a "person" subject to suit under § 1983. *Hafer v. Melo*, 502 U.S. 21, 33 (1991).

immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks omitted).

In determining whether a government official was performing a discretionary function, a court considers whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "In applying each prong of this test, [a court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266; *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (noting that framing the inquiry as whether it was within a defendant's authority to commit an allegedly illegal act "is no more than an untenable tautology"). "Put another way, to pass the first step of this discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Holloman ex rel. Holloman*, 370 F.3d at 1266 (emphasis in original). A court must, however, "be sure not to characterize and assess the defendant's act at too high a level of

generality." *Id.* (explaining characterization of action at high level of abstraction makes it impossible to determine whether official was truly acting within proper scope of job-related activities).

For example, "[i]n considering whether an act of allegedly excessive force fell within a police officer's duties . . . [a court] do[es] not ask whether police have the right to use *excessive* force. [It] also do[es] not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. [It] instead ask[s] whether they have the power to attempt to effectuate arrests." *Id.* (citing *Lee*, 284 F.3d at 1194); *see also Tomberlin*, 1 F. Supp. 3d at 1225-26 (holding employees of county subdivision of ADHR acted within discretionary authority when investigating allegations plaintiff committed child abuse, which investigation the plaintiff claimed gave rise to constitutional violations). Relatedly, "it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism," although promotion of civic engagement and altruism may be legitimate pedagogical goals. *Holloman ex rel. Holloman*, 370 F.3d at 1267.

Applying this standard, it is clear the conduct challenged by the plaintiff occurred within the performance of the individual defendants' job-related functions

through means within their power to utilize. A function of ADHR and, specifically, its Child Support Enforcement Division, of which the individual defendants are agents, is to collect child support, and garnishments and judicial actions are within its arsenal of tools to accomplish this goal.[9]

Having established the individual defendants were performing discretionary functions in relation to the challenged conduct, the inquiry becomes whether the plaintiff has alleged the violation of a clearly established constitutional or statutory right. *Holloman ex rel. Holloman*, 370 F.3d at 1264. This inquiry is subdivided into two prongs: (1) whether the plaintiff has alleged the violation of a constitutional right and (2) whether that right was clearly established at the time of the alleged violation. *Id.* A court has discretion to decide which of the prongs to address first, taking into consideration the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 235-42 (2009) (noting "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.").

The United States Supreme Court has explained that "the right allegedly violated must be defined at the appropriate level of specificity before a court can

---

[9] *See* http://dhr.alabama.gov/services/child_support_services/child_support_enforcement.aspx (last visited July 23, 2019) (indicating ADHR's Child Support Enforcement Division obtains orders for payment of child support and secures compliance with child support court orders); http://dhr.alabama.gov/services/child_support_services/Enfrcmnt_Ct_Ord_CSPayments.aspx (last visited July 23, 2019) (identifying liens and levies on bank accounts as a means of securing compliance with child support court orders).

determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). The right should not be defined abstractly or at a high level of generality but, rather, in a more particularized manner. *Anderson*, 483 U.S. at 639 (explaining right defined abstractly or at high level of generality would convert the rule of qualified immunity into a rule of virtually unqualified liability); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (noting the Court has repeatedly warned lower courts of this error). For example, because the Due Process Clause of the Fifth and Fourteenth Amendments clearly establishes the right to due process of law, "there is a sense in which any action that violates [due process] violates a clearly established right." *Anderson*, 483 U.S. at 639. Similarly, "[t]he general proposition [] that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742.

The right properly defined is clearly established if precedent of the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court, as existed at the time of the conduct at issue, provided fair warning to the defendants that their conduct violated the right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (holding relevant question was whether state of law at time of conduct at issue gave defendants fair warning that such conduct was unconstitutional); *Jenkins by*

*Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (noting in Eleventh Circuit, law can be clearly established for purposes of qualified immunity only by decision of United States Supreme Court, Eleventh Circuit Court of Appeals, or highest court of state where case arose); *see also Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). While a case directly on point is not required, existing precedent "must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Here, the rights the plaintiff alleges the defendants violated are properly defined as the rights to be free from erroneous garnishment, improper application of garnished funds to satisfy a medical support obligation, and improper intervention in domestic relations proceedings. The plaintiff cites no United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court precedent that would have informed the defendants their conduct violated these rights, and the undersigned has found none. *Cf. Tomberlin*, 1 F. Supp. 3d at 1226 (holding employees of county subdivision of ADHR were entitled to qualified immunity because while plaintiff's rights may have been violated by continuation of investigation and modification of parental rights after acquiring knowledge abuse was unlikely to have occurred, those rights were not clearly established). Accordingly, to the extent the plaintiff asserts § 1983 claims against Lee, Frazier,

Roussell, and Saulsberry in their individual capacities, these defendants are entitled to qualified immunity, and the claims are due to be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted.[10]

**B. Direct Claims**

To the extent the plaintiff asserts claims directly under the constitutional, statutory, and regulatory provisions he alleges the defendants violated, those claims fail either because the provisions at issue do not provide a direct or private right of action or because the plaintiff has failed to allege plausible facts to support the claims.

### 1. Constitutional and Statutory Violations for Which No Private Right of Action Exists

A private right of action is "an individual's right to sue in a personal capacity to enforce a legal claim." *Right of Action*, BLACK'S LAW DICTIONARY (10th ed. 2014). Not every federal statute provides a private right of action. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."). For an individual to bring a claim alleging a violation of a statute, the statute must explicitly or implicitly

---

[10] Here again, the undersigned assumes, without deciding, the federal statutes and regulations the plaintiff alleges the defendants violated create federal rights enforceable through § 1983. *See supra* note 7.

provide for a private right of action. *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1361 n.14 (11th Cir. 2008) (noting that when statute does not expressly provide for private right of action, court considers four factors identified in *Cort v. Ash*, 422 U.S. 66, 78 (1975), to determine whether Congress intended to imply such right).

No direct right of action under the Constitution exists against state actors because § 1983 provides a remedy for alleged constitutional violations by these persons. *See Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982) (holding direct right of action under Constitution should not be implied against state actors because § 1983 provides an adequate substitute); *Anderson v. Edwards*, 505 F. Supp. 1043, 1045 (S.D. Ala. 1981) (noting no claim exists under First and Fourteenth Amendments but, rather, violation of those amendments must be vindicated through § 1983); *Barbee v. Naphcare, Inc.*, 2007 WL 9712008, at *3 (N.D. Ala. Aug. 9, 2007) (dismissing claims for violations of the First and Fourteenth Amendments because plaintiff did not assert these claims under § 1983 and had no direct right of action under the Constitution); *Am. Gen. Life and Acc. Ins. Co. v. Ward*, 509 F. Supp. 2d 1324, 1334-35 (N.D. Ga. 2007) (dismissing direct claim for violation of Fourteenth Amendment); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (holding plaintiff had no direct right of action under Constitution and was required to have asserted claim for

constitutional violation through § 1983); *Universal Outdoor, Inc., v. Elk Grove Village*, 969 F. Supp. 1124, 1125 (N.D. Ill. 1997) (noting no direct right of action under Constitution exists against state actors); *Mohsin v. California Dep't of Water Res.*, 52 F. Supp. 3d 1006, 1011 (E.D. Cal. 2014) (dismissing direct claim for violation of Fourteenth Amendment).[11]

Courts have held no express or implied private right of action exists under the garnishment provisions of the Consumer Credit Protection Act, which are enforced by the Secretary of Labor. *See Curry v. Lopez*, 2017 WL 5989728, at *7 (N.D. Ill. Dec. 4, 2017), *aff'd*, 756 F. App'x 649 (7th Cir. 2019); *Corrado v. State of New York Univ. Stony Brook Police*, 2016 WL 4179946, at *4 (E.D.N.Y. Aug. 5, 2016); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 501-02 (S.D.N.Y. Mar. 6, 2015); *Colbert v. Roling*, 233 F. App'x 587, 590 (8th Cir. 2007); *Flax v. Delaware Div. of Family Servs.*, 2008 WL 1758857, at *11 (Apr. 16, 2008), *aff'd sub nom. Flax v. Delaware*, 329 F. App'x 360 (3d Cir. 2009); *Smeyres v. Gen. Motors Corp.*, 820 F.2d 782, 783-84 (6th Cir. 1987); *LeVick v. Skaggs Cos.*, 701

---

[11] Additionally, the undersigned notes the Due Process Clause of the Fifth Amendment does not apply to the states but, rather, only to the federal government. *See Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) ("The Fifth Amendment Due Process Clause . . . applies 'only to actions of the federal government – not to those of state or local governments.'") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)); *cf. Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law." (internal quotation marks omitted)); *Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.").

F.2d 777, 779-80 (9th Cir. 1983); *McCabe v. City of Eureka, Missouri*, 665 F.2d 680, 682-83 (8th Cir. 1981); *Smith v. Cotton Bros. Baking Co., Inc.*, 609 F.2d 738, 741-43 (5th Cir. 1980), *cert. denied*, 449 U.S. 821 (1980).

Likewise, courts have held no express or implied private right of action exists under 18 U.S.C. § 666. *See Dixon v. Washington*, 2018 WL 5046033, at *3 (E.D. Pa. Oct. 17, 2018); *Myers v. Davenport*, 2014 WL 2805278, at *1 (D. Mass. June 18, 2014); *Small v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 3719314, at *8-9 (E.D. Ca. Sept. 16, 2010); *Crooked Creek Properties, Inc. v. Ensley*, 2009 WL 3644835, at *6 (M.D. Ala. Oct. 28, 2009), *aff'd*, 380 F. App'x 914 (11th Cir. 2010); *Piorkowski v. Parziale*, 2003 WL 21037353, at *8 (D. Conn. May 7, 2003); *Whitmire v. U.S. Veterans Admin.*, 661 F. Supp. 720, 723 (W.D. Wash. 1986).

Federal courts have declined to interpret state criminal statutes as providing private rights of action where the statutes do not so expressly provide. *See Anthony v. Am. Gen. Fin. Servs., Inc.*, 583 F.3d 1302, 1305 (11th Cir. 2009) (certifying to Georgia Supreme Court question whether Georgia criminal statute addressing notary fees gives rise to private right of action after noting reluctance to read provision for such action into criminal statute where state courts and state legislatures have not done so), *certified question answered*, 287 Ga. 448, 459 (2010) (holding private right of action may not be implied to remedy violation of Georgia criminal statute at issue); *Goia v. CitiFinancial Auto*, 499 F. App'x 930,

937 (11th Cir. 2012) (holding civil remedy cannot arise from violation of Georgia criminal statutes for trespassing and theft because the statutes do not expressly provide for civil remedy); *Walker v. Mobile Police Dep't*, 2017 WL 1398654, at *3 (S.D. Ala. Apr. 18, 2017) (holding plaintiff could not bring civil suit for violations of Alabama statute criminalizing harassment where nothing in text of statute could plausibly be read as creating private right of action); *Bass Angler Sportsman Soc. V. U.S. Steel Corp.*, 324 F. Supp. 412, 415-16 (S.D. Ala. 1971) (noting that generally criminal statutes cannot be enforced through private civil actions but, rather, only by government), *aff'd*, 447 F.2d 1304 (5th Cir. 1971). The Alabama Code does not expressly provide a private right of action to vindicate commission of the crime of theft of property. *See* Ala. Code § 13A-8-1, *et seq.*; *see also Phillips v. Publ'g Co., Inc.*, 2015 WL 5821501, at *25 (S.D. Ga. Sept. 14, 2015) (noting Alabama law does not provide private right of action for victim of criminal theft); *Dortch v. Hetrick*, 2016 WL 6306122, at *3 (S.D. Ala. Sept. 27, 2016) (recommending dismissal of plaintiff's claim defendant committed theft under Alabama law because private citizen has no judicially cognizable interest in prosecution of crime), *report and recommendation adopted*, 2016 WL 6304441 (S.D. Ala. Oct. 26, 2016). The undersigned declines to imply one absent such express provision.

For the foregoing reasons, to the extent the plaintiff asserts claims directly

under the Fourth, Fifth, Eighth, or Fourteenth Amendments, garnishment provisions of the Consumer Credit Protection Act, 18 U.S.C. § 666, or Ala. Code. §§ 13A-8-2 or 13A-8-3, those claims are due to be dismissed with prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because there is no direct or private right of action under these constitutional and statutory provisions.

## 2. Regulatory Violations That Lack Supporting Factual Allegations

Federal regulations cannot create private substantive or procedural rights absent statutory authorization. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[W]hen a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1353-54 (11th Cir. 2002) (noting *Sandoval* instructs a private right or remedy cannot be created or conferred by federal regulation promulgated under statute that does not create or confer such right or remedy).

Title 45, Sections 302.34 and 302.50 of the Code of Federal Regulations were promulgated under Title IV-D of the Social Security Act. *See* 45 C.F.R. §§ 302.34 and 302.50. Title 42, sections 654(5) and (7) of the U.S. Code are the

statutory sections corresponding to the regulations.  *See* 42 U.S.C. §§ 654(5) and (7).

Research has yielded no authority directly addressing whether these statutory sections and the regulations promulgated under them provide for private rights of action.  *See* Ashish Prasad, *Rights Without Remedies: Section 1983 Enforcement of Title IV-D of the Social Security Act*, 60 U. Chi. L. Rev. 197, 198 (1993) (noting that if Title IV-D cannot be enforced through § 1983, only potential alternative private means of enforcement is through implied right of action under statute, which alternative is unlikely because text and history of Title IV-D provide no explicit indication of congressional intent to create such action).  Ultimately, it is not necessary to undertake the analysis because the plaintiff has failed to allege facts that would support the violation of any substantive rights that might conceivably be created by the statutory and regulatory provisions at issue.[12]

---

[12] A requisite predicate to the analysis would be that the statutory and regulatory provisions at issue create substantive, personal rights.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979) ("The question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative" where a "statute by its terms grants no private rights to any identifiable class.").  The undersigned notes that while the Supreme Court has left open the possibility that some provisions of Title IV-D might create substantive, personal rights, *see Blessing*, 520 U.S. at 345, it does not appear any court of appeals has subsequently determined a provision of Title IV-D creates such a right, *see Arrington v. Helms*, 438 F.3d 1336, 1342-47 (11th Cir. 2006) (holding 42 U.S.C. § 657 does not create a personal right enforceable through § 1983); *Hughlett v. Romer-Sensky*, 497 F.3d 557, 561-65 (6th Cir. 2006) (holding 42 U.S.C. §§ 657(a) and 654b(c) do not

Section 302.34 requires a state plan to provide for cooperative agreements between the state and courts, law enforcement officials, corrections official, and Indian Tribes or Tribal organizations for the purpose of encouraging the prompt and efficient collection of child support.  45 C.F.R. § 302.34; *see also* 42 U.S.C. § 654(7).  Subsection (a) of section 302.50 requires a state plan to provide for the assignment to the state of child support rights belonging to a recipient of certain federal benefits, and subsection (e) prohibits use of amounts collected pursuant to the assignment for the purpose of satisfying a medical support obligation absent an order to the contrary.  45 C.F.R. § 302.50(a) and (e); *see also* 42 U.S.C. § 654(5).

The plaintiff alleges the defendants violated § 302.34 by moving to set aside an agreement into which he and his former wife had entered.  (Doc. 19 at 9).  The plain language of § 302.34 makes clear the regulation addresses cooperative agreements between the state and its partners for the purpose of collecting child support, not child support agreements between parents.  *See* 45 C.F.R. § 302.34; *see also* 42 U.S.C. § 654(7).  Therefore, even if this regulation and the statutory provision to which it may be traced give rise to private substantive and procedural

create personal rights enforceable through § 1983); *Cuvillier v. Taylor*, 503 F.3d 397, 402-08 (5th Cir. 2007) (holding 42 U.S.C. §§ 651-652(a)(1) and (h), § 654(4)(B) and (13) and corresponding federal regulations do not create personal rights enforceable through § 1983); *Sheetz v. Norwood*, 608 F. App'x 401, 404-05 (7th Cir. 2015) (noting no court of appeals has ever concluded a provision of Title IV-D creates a personal right) (citing *Arrington*, *Hughlett*, and *Cuvillier*).

rights, the amended complaint lacks factual allegations that would support a claim for violation of the right.

The plaintiff also claims the defendants violated 45 C.F.R. § 302.50(e). He does not explain the basis for this claim in the body of his amended complaint. He does attach to his amended complaint a payment summary generated by the State of Alabama's Child Support Enforcement Division, which appears to show he owed $12,626.85 in medical support as of March 12, 2018. (Doc. 19 at 23). However, the amended complaint is devoid of any factual allegation the defendants used funds garnished from his Regions Bank account(s) to satisfy his medical support obligation. Therefore, even if this regulation and the statutory provision to which it may be traced give rise to private substantive and procedural rights, the amended complaint lacks factual allegations that would support a claim for violation of the right.

Accordingly, to the extent the plaintiff asserts claims directly under the 45 C.F.R. §§ 302.34 or 302.50(e), those claims are due to be dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted.

## IV. Conclusion

For the foregoing reasons, the defendants' motion to dismiss the plaintiff's amended complaint (Doc. 27) is due to be granted, and the plaintiff's claims are due to be disposed of as indicated above.[13]  A separate order will be entered.

**DONE** this 23rd day of July, 2019.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[13] Generally "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).  Although the plaintiff has had an opportunity to file an amended complaint, that pleading was filed as "a matter of course" and, therefore, cannot be considered as a prior opportunity to amend for purposes of dismissing all of his claims with prejudice.  *See* Fed. R. Civ. P. 15(a) (allowing amendment of complaint as "a matter of course" within 21 days after service of Rule 12(b) motion and, thereafter, only with leave of court); *Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001) (holding plaintiff could not be considered to have been given prior opportunity to amend where amended complaint was filed as "a matter of course").  Accordingly, where a more carefully drafted complaint could conceivably state a viable claim, the plaintiff's claims are due to be dismissed without prejudice.  However, to the extent the defendants are not "persons" subject to suit under § 1983 and are entitled to sovereign and qualified immunity, and to the extent the constitutional and statutory provisions cited by the plaintiff provide no direct or private right of action, amendment would be futile, and the plaintiff's claims are due to be dismissed with prejudice. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (holding district court need not allow amendment if to do so would be futile because complaint as amended would still be properly dismissed or be immediately subject to summary judgment for defendant).